UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | Case No.: 21-cr-455 (RCL) |
| | : | |
| **REED KNOX CHRISTENSEN** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO EXCLUDE
THE TESTIMONY OF DR. CHRISTOPHER A. REILLY**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves to exclude the Defendant, Reed Knox Christensen's, proposed expert testimony of Dr. Christopher A. Reilly. First, the defendant's notice is deficient. It fails to meet the requirements of Rule 16 of the Federal Rules of Criminal Procedure and it limits the government's ability to assess the expert's qualifications and the relevance and reliability of the testimony. Second, even based on the limited information that was provided, Mr. Reilly is not qualified to opine on the particular subjects for which he is noticed. Third, even if he were qualified to opine on the particular subjects for which he is noticed, the defendant seeks to call the expert to testify as to matters that are irrelevant.

The Court should order the defendant to: (1) provide a notice that complies with Rule 16 (sufficiently in advance of trial so that the government can determine whether any further motion practice is necessary); (2) bar any testimony from the expert about the legality of the officers' use of OC spray; and (3) require defendant to make a threshold showing of reliability and relevance (through a notice and, if necessary, a *Daubert* hearing) before allowing the expert to testify about

the effects of OC spray in this case. Allowing Dr. Reilly to testify based on the current, inadequate disclosure risks wasting the jury's and the Court's time and confusing the issues.

## I. BACKGROUND

On January 6, 2021, at approximately 2:20:42 p.m., defendant was pulling on the bicycle racks that the police were using to protect their line. MPD Officer Bagshaw commanded the defendant to "stop." When he did not, Officer Bagshaw sprayed him in the face and hat. The defendant continued pulling on the rack for a few more seconds before retreating. The defendant then washed his face with water bottles—one provided by law enforcement.

At 2:23:08 p.m., roughly two and a half minutes later, the defendant successfully pulled a bike rack away from the police line while pushing MPD Officer Chapman's hand off it. In response, Officer Chapman sprayed the defendant—who attempted to block the spray with his arm and charged forward, toward the officer. With the bike rack removed, the defendant was free to close on Officer Chapman and assault him with two hands. After he forced Officer Chapman to retreat, the defendant pushed against another USCP Officer. The defendant then squared up with and struck MPD Officer Cooke-Barnes at 2:23:19 p.m. before retreating with his hands up.

In connection with this conduct, the defendant is charged with (1) civil disorder, in violation of 18 U.S.C. § 231(a)(3); (2) three counts of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1); (3) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (4) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4) and engaging in an act of physical violence in the Capitol Grounds of Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

On August 11, 2023, the defendant disclosed the identity of his expert, Dr. Christopher A. Reilly, to the government and provided limited background information regarding Dr. Reilly, along with a brief description of his anticipated testimony. According to the one-page notice, Dr. Reilly will testify "to the best practices in law enforcement training; typical guidelines for the appropriate dispensing of less than chemical sprays; the chemicals and dispensing mechanisms involved in this case; his expert opinion on the application, effect, and likely consequences of the chemical sprays that were dispensed by law enforcement personnel on the defendant; and the typical effects on individuals when chemical sprays and (sic) are dispensed, both within and outside of the manufacturing guidelines and training guidelines." No CV, list of publications, or list of previous testimony was included. The notice is attached as Exhibit 1.

## II. APPLICABLE LAW

### A. Admissibility of Expert Testimony

Federal Rules of Evidence 702, 703, and 704 establish the basic parameters for expert witness testimony. Rule 702 permits a witness who is qualified as an expert to testify in the form of an opinion if the "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be admissible at trial, expert testimony "must be helpful to the trier of fact" and cannot serve to "merely tell the jury what result to reach." Fed. R. Evid. 704, Advisory Committee Notes. Applying these rules, the Supreme Court has held that expert testimony must be excluded if: (1) it is not reliable; or (2) it is not relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (observing that Rule 702 assigns to the trial judge the task of ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). This test ensures that each testifying expert, "whether basing testimony upon professional studies or

personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). An expert's opinion testimony will be excluded as unreliable if the expert is unqualified to provide the opinion, if the expert did not base the opinion on sufficient facts or data or employ reliable methods and principles, or if the expert did not reasonably apply appropriate methods and principles to the facts of the case. Fed. R. Evid. 702 (requiring expert testimony to meet these standards); *see Kumho Tire*, 526 U.S. at 155-56 (affirming exclusion of expert testimony based upon unreliable methodology); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F.Supp.3d 14, 53 (D.D.C. 2017) (Friedman, J.) (excluding opinion testimony that exceeded the scope of the expert's expertise).

In a criminal case, Rule 704 further prohibits an expert from providing an opinion "about whether the defendant did or did not have a mental state . . . that constitutes an element of the crime charged." Fed. R Evid. 704(b). Rather, "[t]hose matters are for the trier of fact alone." *Id*. An expert also may not testify to legal conclusions, as such testimony does not properly assist the jury in understanding the evidence or determining any fact at issue—Rule 702's stated purpose for allowing expert testimony. *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect, and thus it is not 'otherwise admissible' [under Rule 704].").

Finally, expert testimony must also satisfy the basic relevancy rules set forth in Fed. R. Evid. 401 and 403, as well as any other applicable evidentiary rule. *Daubert*, 509 U.S. at 595 (noting that because "[e]xpert evidence can be both powerful and quite misleading . . . the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." (citations omitted)); *id*. ("Throughout, a judge assessing a

proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules [of evidence]."). The party proposing the expert testimony bears the burden of showing that the testimony satisfies Rule 702 and is therefore admissible. *See Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 (D.C. Cir. 2001).

### B. Fed. R. Crim. P. 16 and Expert Witness Disclosure Requirements

The recently revised Rule 16(b)(1)(C) governs the content of the required disclosures a defendant must make to use expert testimony at trial: "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(b)(1)(C)(i) and (iii). The witness must approve and sign the disclosure, unless the government: (1) states in the disclosure why it could not obtain the witness's signature through reasonable efforts; or (2) has previously provided under Section F, that a report, signed by the witness, contains all the opinions and the bases and reasons for them required by law. Fed. R. Crim. P. 16(b)(1)(C)(v). Failure to comply with these disclosure requirements provides a sufficient independent basis for excluding the expert's testimony at trial. *United States v. Day*, 524 F.3d 1361, 1370-71 (D.C. Cir. 2008) (affirming district court's exclusion of expert testimony for this reason).

### III. ARGUMENT

### A. The Defendant's Expert Notice is Insufficient.

The opinion testimony noticed by the defendant fails to satisfy the basic requirements for admissible expert testimony under Fed. R. Evid. 702, 703, 704, 401, and 403 and should therefore

be excluded. In addition, the defendant's disclosure falls far short of Rule 16(b)(1)(C)'s notice requirements.

On August 15, 2023, the Court issued a Scheduling Order ahead of the start of the September 11, 2023 trial. ECF. No. 58. The Order required the parties to disclose the identity of its expert witness, to provide a brief description of the witness's area of expertise, and to provide the witness's expected testimony. In response, the defendant provided the government with witness's identity and a "brief description of anticipated testimony." The defendant's disclosure, however, is insufficient. The disclosure does not provide the area of expertise which the defendant will seek to have Dr. Reilly be declared as an expert. The defendant did not provide a curriculum vitae outlining Dr. Reilly's background. Critically, the notice does not include *any* opinions that the defendant will elicit from the witness in the defendant's case-in-chief or the bases and reasons for them, let alone a "complete statement." The defendant did not provide a written report with Dr. Reilly's opinion. While perhaps compliant with the language in the Court's scheduling order governing expert disclosures, the defendant should supplement his notice to comply with Rule 16(b)(1)(C)'s notice requirements nonetheless. As drafted, it provides so little information that it impairs the Court's ability to serve as a gatekeeper and the government's ability to prepare for trial and discern whether it may need a rebuttal expert. It also threatens to waste time. It will require lengthier examinations at trial simply to discover facts about the expert's background and training that, if provided in advance, may not be subject to dispute. A more complete disclosure would also allow the government to assess whether the expert's testimony should be excluded (or limited), permitting it to alert the Court before the expert provides potentially confusing and time-wasting testimony to the jury, should it later be excluded.

The defendant has noticed Dr. Reilly, a toxicologist, as having "extensive experience with an expertise in the topic of pepper spray." The notice indicates that Dr. Reilly has studied the composition of pepper sprays and its effects on the human body. The notice further indicates that Dr. Reilly has served as a consultant and expert witness for several cases involving "the use and safety/health effects of pepper sprays," without naming any of them. Similarly, it claims he published formative studies," but does not list any.. Moreover, there is no indication of the field of expertise in which Dr. Reilly was qualified at the cases in which he testified. Notably, the defendant's disclosure states that Dr. Reilly will testify to law enforcement practices and the use of pepper spray. With the exception of mentioning that Dr. Reilly has spoken about "novel insights into the use of pepper spray in law enforcement," there is no indication that Dr. Reilly has any specific training or expertise in either law enforcement or the policing procedures utilized by the law enforcement agencies relevant in this matter. Moreover, the notice does not sufficiently show how Dr. Reilly's opinion would be relevant in this case. Without more, there is a high potential for confusion and misleading evidence being admitted.

### B. Defendant Has Not Established the Relevance of the Expert's Testimony

As described above, Dr. Reilly appears to have no expertise in the use of force by law enforcement; his potential expertise would be limited to the effects of pepper spray.  It is unclear exactly how testimony about the effects of pepper spray – commonly, blurred vision, tearing, and pain – would negate any of the elements of assault here or support any affirmative defenses.  It may be that defendant seeks to elicit this testimony as some sort of self-defense argument, although only one of the officers whom defendant attacked (Officer Chapman) sprayed him, defendant was clearly the first aggressor in the interaction, and retaliating against an officer for spraying by charging at him is entirely different from trying to protect himself from being sprayed in the first

place. In other words, even if the expert were to testify that, for example, being pepper sprayed can be painful, he still could not establish a self-defense claim. *See* Christensen Proposed Jury Instructions, Instruction 32. ECF No. 60.

"[T]he Court must determine whether the proffered testimony is sufficiently tied to the facts of the case and whether it will aid the factfinder in resolving a factual dispute." *FTC v. Whole Foods Mkt., Inc.*, Case No. 07-cv-1021 (PLF), 2007 WL 7632283, at *1 (D.D.C. July 27, 2007) (citing *Daubert*, 509 U.S. at 592–93); *United States v. Gonzalez-Maldonado*, 115 F.3d 9, 17–18 (1st Cir. 1997) ("Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value. On the other hand, the risk of unfair prejudice is real. By appearing to put the expert's stamp of approval . . . such testimony might unduly influence the jury's own assessment of the inference that is being urged") (citation omitted); *United States v. Davis*, 772 F.2d 1339, 1343–44 (7th Cir. 1985) ("Expert testimony is not admissible under Rule 702 if it will not assist the jury in understanding the evidence or determining a fact in issue or it is purely speculative."). Here, absent more, defendant has not shown the relevance of this testimony to a "fact in issue."

There is a high risk that this testimony, coming with "the expert's stamp of approval," will confuse and unduly influence the jury. *Davis*, 772 F.2d at 1343–44. Based on the defendant's disclosure, absent more, it is unclear how Dr. Reilly has specialized training or knowledge that would allow him to opine on this issue. For these reasons, Dr. Reilly's testimony must be excluded.

## IV. CONCLUSION

The defendant seeks to elicit opinion testimony of an unclear nature from an insufficiently noticed expert witness. The Court should order the defendant to: (1) provide a notice that complies with Rule 16 sufficiently in advance of trial; (2) bar any testimony from the expert about the legality of

the officers' use of OC spray; and (3) require defendant to make a threshold showing of reliability and relevance (through a notice and, if necessary, a *Daubert* hearing) before allowing the expert to testify on the effects of OC spray.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Brittany L. Reed*
BRITTANY L. REED
Assistant United States Attorney
LA Bar No. 31299
650 Poydras Street, Ste. 1600
New Orleans, LA 70130
504-680-3031
Brittany.Reed2@usdoj.gov

*/s/ Tighe Beach*
TIGHE BEACH
Assistant United States Attorney
CO Bar No. 55328
601 D Street, N.W.
Washington, D.C. 20001
240-278-4348
tighe.beach@usdoj.gov