UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-455 (RCL) |
| v. : | |
| : | |
| REED KNOX CHRISTENSEN, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS
TWO, THREE, AND FOUR OF THE SUPERSEDING INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits that this Court should deny Reed Knox Christensen's Motion to Dismiss Counts Two, Three, and Four of the Superseding Indictment. ECF No. 59 (Motion); ECF No. 21 (Indictment).

Counts Two, Three, and Four charge Christensen with Assaulting, Resisting, or Impeding Certain Officers under 18 U.S.C. § 111(a)(1). Christensen argues that these Counts are unconstitutionally vague and do not contain facts essential to the offense charged. ECF 59 at 8-15. Sections I-III of Christensen's most recent Motion to Dismiss, ECF No. 59, repeat the arguments contained in his first Motion to Dismiss, ECF No. 43. Instead of addressing these again, the government directs the Court to its Response to that Motion. ECF No. 45.

Christensen's contentions misapply the law and should be denied.

**FACTUAL BACKGROUND**

Christensen is charged in an eight-count Superseding Indictment ("Indictment") for offenses committed at the U.S. Capitol Building on January 6, 2021. Around 2:20pm on the West Plaza, Christensen initiated the forcible removal of bike rack barriers that were preventing

rioters from moving closer to the Capitol building. While Christensen attempted to remove the bike rack barrier, an officer sprayed him with pepper spray. Despite this, Christensen breached the bike rack perimeter. Briefly, Christensen paused while he received aid from officers (a water bottle to wash away the pepper spray). But once other rioters forcefully removed the barrier, Christensen charged several officers. He struck them with his fists and pushed them. At that point, Christensen was at the front of the group of rioters initiating physical attacks on the officers, who went on to lose ground, allowing the rioters access to the Capitol building.

## PROCEDURAL HISTORY

Based on his actions, the grand jury returned an eight-count Indictment on December 1, 2021, charging Christensen with: Count One, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Counts Two-Four, Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); Count Five, Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Count Six, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Count Seven, Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); Count Eight, Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F). ECF No. 28.

On January 31, 2023, Christensen filed a Motion to Dismiss Counts One, Five, Six, Seven, and Eight of the of the Indictment. ECF No. 43. The government filed its Response on February 10, 2023. ECF No. 45.

On August 16, 2023, Christensen filed this Motion to Dismiss, which now includes Counts Two, Three, and Four. ECF No. 59.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the prosecution "has made a full proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (declining to hold but citing this holding in Circuits 3, 8, and 11)—neither of which occurred here.

A criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016).

Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination. Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *See United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980); *Yakou*, 428 F.2d at 246-47; *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (there is no procedure in criminal cases that permits pretrial determination of the sufficiency of the evidence). Indeed, "[i]f contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

Thus, when ruling on a motion to dismiss for failure to state an offense, the court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. United States v. Bingert, 605 F. Supp. 3d 111, 120 (D.D.C. 2022) (RCL) (ECF 67:5); *United States v. Puma*, No. 21-cr-454 (PLF), 2020 WL 823079 at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

### I. The Indictment is Sufficient.

The Motion to Dismiss Counts Two, Three, and Four should be denied because the Indictment properly alleges these offenses. Count Two states: "On or about January 6, 2021, within the District of Columbia, REED KNOX CHRISTENSEN, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), Metropolitan Police Department Officer D.C., while such person was engaged in and

on account of the performance of official duties." Counts Three and Four are identical except they each name a different officer victim.

Counts Two, Three, and Four track the statutory language of Section 111(a)(1) while identifying the date of the offense and victims. Thus, Counts Two, Three, and Four are sufficient. *See, e.g., Williamson*, 903 F.3d at 130; *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) ("[T]he time-and-date specification in respondent's indictment provided ample protection against the risk of multiple prosecutions for the same crime."); *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) ("We have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (quotation marks omitted).

Thus, the defendant's arguments about whether an "assault" is an element of every § 111(a) violation is not relevant to the question whether the Indictment in this case properly states an offense. Here, the Indictment tracks the statutory language, identifies the date on which the offense occurred, and identifies the victim of the defendant's assault. Nothing more is required. As Judge Moss, rejecting a similar motion to dismiss a Section 111(a) count, recently recognized:

> Cua argues that Count Three of the Second Superseding Indictment (hereinafter, "Indictment") should be dismissed because, on his reading of the statute, an assault is an indispensable element of every § 111(a) violation. At the outset, the Court questions whether Cua's motion is properly framed as a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), since Count Three of the Indictment charges Cua with, among other things, "forcibly assault[ing]" officer G.L., while he was "engaged in and on account of the performance of [his] official duties," Dkt. 90 at 3, and the Court has scheduled a bench trial on that question, see Min. Order (Feb. 13, 2023). Thus, even under Cua's reading of the statute, the Indictment states an offense.
> . . .

>       Count Three sufficiently sets forth "the elements of the offense charged" and "fairly informs [Cua] of the charge against which he must defend." *Hamling*, 418 U.S. at 117.

*United States v. Cua,* No. CR 21-107 (RDM), 2023 WL 216719, at *3, 12 (D.D.C. Feb. 22, 2023).

As in *Cua,* regardless of whether the government must prove an "assault" at trial, then, the indictment is sufficient, tracking the statutes, specifies the date of the offenses ("January 6, 2021"), the district in which they occurred, and the victims. It is premature at this point to address whether every Section 111(a) charge requires proof of an assault. That question may be relevant when formulating jury instructions or ruling on a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, but it has no bearing at this point in the proceedings.

**II.     Section 111(a) Does Not Require the government to Prove an Assault.**

While not appropriate for resolution on a motion to dismiss, because the Court may need to address this issue during the upcoming trial, the government sets forth its position here: the government need not prove an "assault" to prove a violation of Section 111(a).

Section 111(a) authorizes punishment for a person who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [i.e., a federal officer] while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1). A misdemeanor penalty is authorized where the individual's act "constitute[s] only simple assault." *Id.* But where the individual's "acts involve physical contact with the victim of that assault or the intent to commit another felony," he faces a term of imprisonment of "not more than 8 years." *Id.* Finally, a person who "uses a deadly or dangerous weapon … or inflicts bodily injury" "in the commission of any acts described in subsection (a)" faces a term of imprisonment of "not more than 20 years." 18 U.S.C. § 111(b).

6

Section 111 thus "establishes three separate crimes," namely, a misdemeanor "simple assault," a felony violation that involves either physical contact or the intent to commit another felony, or an aggravated violation that involves either a dangerous weapon or results in the infliction of bodily injury. *See United States v. Siler*, 734 F.3d 1290, 1296 (6th Cir. 2013). None require an assault.

A.   **Statutory text and precedent support the government's view.**

Section 111 plainly identifies six categories of prohibited conduct, covering anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" with a federal officer engaged in official duties. 18 U.S.C. § 111(a)(1). By using commas between the verbs and the disjunctive "or," Congress made clear its intention that each category of prohibited conduct should be separate and independent of the others. *See Horne v. Flores*, 557 U.S. 433, 454 (2009). And although all six acts require the defendant to act "forcibly," *see United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002), only one is "assault." The other five prohibited acts involve behavior that threatens federal officers or obstructs their official activities but is not necessarily "assault."

Each of Section 111's three crimes points back to these six categories. Section 111(a)'s simple-assault clause points back to "the acts in violation of this section"; both alternatives identified in Section 111(a)'s felony clause (physical contact or felonious intent) point back to "such acts"; and Section 111(b)'s "enhanced penalty" provision points back to "any acts described in subsection (a)." 18 U.S.C. § 111. Because each clause references all six prohibited acts, each necessarily punishes that full range of obstructive conduct—not assaults alone.

The government agrees with the many circuits that have held that "assault is not an essential element of every § 111 offense." *United States v. Stands Alone*, 11 F.4th 532, 535 (7th

Cir. 2021); *see also United States v. Briley*, 770 F.3d 267, 273-75 (4th Cir. 2014); *United States v. Williams*, 602 F.3d 313, 315-18 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021, 1024-27 (6th Cir. 2009). As those circuits have concluded, Christensen's interpretation, which reads Section 111(a) to require proof of an assault in all cases violates several principles of statutory interpretation.

First, Christensen's interpretation of Section 111(a) fails "to … give[] effect" to "every word" in the statute. *Stands Alone*, 11 F.4th at 536 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)); *see generally United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F.4th 730, 738 (D.C. Cir. 2022) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (citation omitted). As noted, the felony clause "refers back to the original list of [six] violative acts against current or former officials." *Briley*, 770 F.3d at 273. "[R]equiring assault as an essential element of *every* § 111 offense would render the remaining five verbs superfluous." *Stands Alone*, 11 F.4th at 535. Christensen worries about "overlap" among the terms under the government's interpretation, ECF No. 59 at 11, but his "reading would render five of those six words -- all but 'assault' -- inoperative with respect to both the misdemeanor and the 'physical contact' felony." *Briley,* 770 F.3d at 274; *see also Stands Alone*, 11 F.4th at 535; *Williams*, 602 F.3d at 317 ("interpreting § 111(a)(1) as requiring an underlying assault for a defendant to be convicted would render meaningless the five forms of non-assaultive conduct that are plainly proscribed by the statute."); *Gagnon*, 553 F.3d at 1026 ("the fatal problem with this reading is that it makes a great deal of what § 111 does say entirely meaningless").

Reading the other verbs out of the statute also "wanders too far from congressional intent" and "rips a big hole in the statutory scheme. Although his reading largely preserves the

protections for the physical safety of federal officials, it leaves those officials without protection for the carrying out of federal functions. It misses the crucial point that § 111 safeguards not only physical safety, but also functional integrity." *Briley*, 770 F.3d at 274 (citing *United States v. Feola*, 420 U.S. 671, 678-79 (1975)); *see Williams*, 602 F.3d at 317 (explaining that the government's "approach is more consonant with the dual purpose of the statute, which, the Supreme Court has noted, is not simply to protect federal officers by punishing assault, but also to 'deter interference with federal law enforcement activities' and ensure the integrity of federal operations by punishing obstruction and other forms of resistance") (quoting *Feola*, 420 U.S. at 678); *Gagnon*, 553 F.3d at 1026 ("Congress's drafting makes clear that § 111's purpose is to protect federal officers and certain employees from a broader range of harmful conduct than just common-law assault. If Congress meant only assault it could have said only assault[.]"). As explained in Section B below, the long-established purpose of the statute was to protect federal officials from forcible obstruction in various forms, and Christensen's reading runs contrary to that purpose.

Christensen's approach also "produces an absurd result. His reading would allow an individual to commit an array of forcible acts against federal officials performing government functions without criminal consequence. That person could use force to resist federal officials, to oppose them, to impede them, to intimidate them, and to interfere with them -- and yet escape the reach of § 111." *Briley*, 770 F.3d at 274; *see Stands Alone*, 11 F.4th at 536 ("We agree with this point.").

The D.C. Circuit's decision in *Arrington* is instructive on Section 111(a)'s sweep. 309 F.3d 40. There, the court explained that "a defendant does not violate the statute unless he forcibly assaults or forcibly resists or forcibly opposes, etc." *Id.* at 44. *Arrington*'s emphasis on

9

Section 111(a)'s disjunctive formulation supports the view that the statute punishes a broad range of conduct beyond assaults. Similarly, if assault were the only way Section 111(a) could be violated, one would not expect the title of the statute to include "resisting" and "impeding" as well as "assaulting." *See* 18 U.S.C. § 111.

Christensen's contrary authorities are not persuasive. His reliance on *United States v. Chapman*, 528 F.3d 1215 (9th Cir. 2008) in support of his reading of the statute is misplaced because Congress abrogated the statutory language relied on by that court. In *Chapman*, the Ninth Circuit considered the prior version of the statute that treated "simple assault" as a misdemeanor and "all other cases" as felonies. *Id.* at 1218 (citations omitted). In deeming the provision to require the defendant to have committed "some form of assault," *id.* at 1221, the court explicitly considered but rejected a distinction based on the presence of physical contact. "If Congress had intended to prohibit both assaultive and non-assaultive conduct and intended to distinguish between misdemeanors and felonies based solely on physical contact," the court stated, "it easily could have said so." *Id.* Congress now has spoken. In 2008, Congress replaced the second punishment tier's "all other cases" language with language specifying that it applies "where such acts involve physical contact … or the intent to commit another felony." See p. 5, *supra*. In so doing, Congress abrogated the reasoning in *Chapman*. *See Williams*, 602 F.3d at 317 ("Congress addressed the ambiguity identified by the Ninth Circuit by explicitly drawing the misdemeanor/felony line at physical contact.").

Defendant also misrepresents the state of the law in the Second Circuit. In *United States v. Davis,* 690 F.3d 127 (2d Cir. 2012), the court concluded that "for a defendant to be guilty of the misdemeanor of resisting arrest under Section 111(a), he necessarily must have committed common law simple assault." *Id*. at 135; *see id*. at 134. But the Second Circuit expressly cabined

this holding to Section 111(a)'s misdemeanor clause –and even there, it recognized that the Fifth and Sixth Circuit's contrary approach, which "simple assault" as "a broad 'term of art' encompassing all of the actions listed in Section 111(a)(1)," better fulfill the statute's purpose to "'deter interference with federal law enforcement activities,' which the Supreme Court has identified as part of Congress's intention in enacting Section 111." *Id.* (citing *Feola*, 420 U.S. at 678). And it stated that "the statute's five non-assault acts would appear to be criminally prohibited by the felony clause 'where such acts involve … the intent to commit another felony,'" *id*. at 136-137—precisely the construction that the government has advanced in this case. Thus, the Second Circuit's reading of the felony provision of 111(a) does not support defendant's reading, as he claims.

Only the Tenth Circuit supports defendant's reading. In *United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016), the court viewed a published circuit decision regarding the pre-2008 statute as compelling the conclusion that "assault is necessarily an element of any § 111(a)(1) conviction," *id*. at 1218, including a conviction under Section 111(a)'s felony clause, *id*. at 1219. The reasoning in *Wolfname*, however, is spare and unpersuasive.

At bottom, the present five-to-one circuit tally overwhelmingly supports the government's felony prosecution of Christensen under Section 111(a) for non-assaultive conduct against federal officers on January 6.[1] Thus, if defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal law enforcement officer and either made physical contact with the victim or had the intent to commit another felony, he is guilty of this offense.

---

[1] The Supreme Court has repeatedly denied petitions for writs of certiorari from defendants, including one filed last term, arguing that Section 111(a) punishes only assaultive conduct against federal officers. *See Stands Alone v. United States*, 142 S. Ct. 2718 (2022); *Briley v. United States*, 575 U.S. 962 (2015); *Williams v. United States*, 562 U.S. 1044 (2010); *Gagnon v. United States*, 558 U.S. 822 (2009).

The government's interpretation has also been adopted in this District. In announcing his verdict in *United States v. McCaughey, et al.*, 21-cr-40-TNM, Judge McFadden held:

> Section 111(a) explicitly refers to the acts in violation of Subsection (a)(1). To be sure, those acts encompass forcible assaults against officers. But they also cover forcible opposition, interference with and impeding officers. And the statute says a felony accrues when such acts involve the intent to commit another felony. The natural implication of this language means that forceful interference with officers, for example, with the intent to commit another felony is a felony violation of the statute. The phrase "such acts" refers to all six verbs in Section 111(a)(1), and those verbs go beyond physical assaults.

McCaughey Transcript, ECF No. 638 at 12. Judge McFadden then found the *McCaughey* defendants guilty of felony violations of Section 111(a) because they committed their violations with the intent to commit civil disorder in violation of Section 231. *Id.* at 28-29, 36. Similarly, in *United States v. Riley Williams*, 21-cr-618 (ABJ), Judge Berman Jackson instructed a jury that it could find the defendant guilty of violating Section 111(a) if "the defendant resisted, opposed, intimidated, or interfered" with a federal officer, with no reference to assault. *Williams*, 21-cr-618, ECF. No. 122 at 32. [2]

B.   **Statutory history and design support the government's view.**

Contrary to Defendant's claim, the history and design of Section 111 confirm its application to non-assaultive conduct. The statute's predecessor made it an offense to "forcibly resist, oppose, impede, intimidate, or interfere with any" designated federal official "while

---

[2]   While not requiring assaults for all violations of Section 111(a), Judge Moss has taken a different view. In *Cua*, Judge Moss divided Section 111(a) into "three categories of violations: (1) acts in violation of the statute that 'constitute only simple assault' (the 'simple-assault provision'); (2) acts in violation of the statute the 'involve physical contact with the victim of that assault' (the 'physical-contact provision'); and (3) acts in violation of the statute that 'involve . . . the intent to commit another felony' (the 'other-felony provision')." 2023 WL 216719, at *5. Judge Moss held "that the first two provisions require an assault," while the third does not. *Id.* at *5-8. For the reasons discussed in the preceding paragraphs, the government disagrees with Judge Moss's interpretation of Section 111(a) to the extent it requires an "assault," in accordance with the many circuits taking the contrary view.

engaged in the performance of his official duties, or [to] assault him on account of the performance of his official duties." Act of May 18, 1934, ch. 299, § 2, 48 Stat. 781 (18 U.S.C. 254 (1940)). That provision, which contained the same six offense-conduct verbs as the current version, was designed to "insur[e] the integrity of law enforcement pursuits." *United States v. Feola*, 420 U.S. 671, 682 (1975). As the Supreme Court recognized, the provision clearly "outlawed more than assaults." *Id*. at 682 n.17; *see Ladner v. United States*, 358 U.S. 169, 176 (1958) (explaining that the prior statute "ma[de] it unlawful not only to assault federal officers engaged on official duty but also forcibly to resist, oppose, impede, intimidate or interfere with such officers," noting that "[c]learly one may resist, oppose, or impede the officers or interfere with the performance of their duties without placing them in personal danger"). In *Ladner v. United States*, for example, the Court stated that "the locking of the door of a building to prevent the entry of officers intending to arrest a person within would be an act of hindrance denounced by the statute." 358 U.S. at 176. The Court noted that in 1948, Congress reordered the statute by placing the word "assaults" in front of the five other verbs. Act of June 25, 1948, ch. 645, 62 Stat. 688 ("Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes"); *see Ladner*, 358 U.S. at 176 n.4. That "change in wording," however, "was not intended to be a substantive one." *Ladner*, 358 U.S. at 176 n.4 (discussing Reviser's Notes). And courts therefore properly continued to uphold convictions for non-assaultive conduct under Section 111. *See United States v. Johnson*, 462 F.2d 423, 425, 429 (3d Cir. 1972) (upholding conviction for "willfully resisting, opposing, impeding and interfering with federal officers," despite jury's conclusion that defendant did not commit "assault").

Before 1994, Section 111 had a two-tier punishment structure: It punished a defendant who forcibly committed actions described by any of the six verbs with up to three years of

13

imprisonment; but where "any such acts" involved a deadly or dangerous weapon, the maximum sentence was ten years. 62 Stat. 688. In 1994, Congress amended the penalty structure of Section 111 to its current tripartite structure by carving out less-severe forms of the offense into their own category. It introduced the phrase "simple assault" to encompass misdemeanor violations, punishable by no more than a year in prison; "all other cases" would continue to be punishable by up to three years; and offenses involving a dangerous or deadly weapon would remain punishable by up to ten years, as would any act that "inflicts bodily injury." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320101(a), 108 Stat. 2108; *see* Federal Judiciary Protection Act of 2002, Pub. L. No. 107-273, Div. C, Tit. I, § 11008(b), 116 Stat. 1818 (increasing second- and third-tier penalties). In so doing, however, Congress gave no indication that it intended to cut back on the statute's substantive reach by eliminating non-assaultive conduct from the statute's scope.

Congress's subsequent amendment of the statute in 2008 specifically limited the second tier to cases involving physical contact or felonious intent by striking the phrase "in all other cases" from Section 111(a) and inserting "where such acts involve physical contact with the victim of that assault or the intent to commit another felony." Court Security Improvement Act of 2007, Pub. L. No. 110-177, § 208(b), 121 Stat. 2538. In doing so, Congress necessarily understood the language of the first-tier misdemeanor provision to encompass non-assaultive conduct—like resisting arrest—that does not involve physical contact or felonious intent. Otherwise, such conduct would not be covered by the statute at all, "rip[ping] a big hole in the statutory scheme" and "leav[ing] those officials without protection for the carrying out of federal functions." *Briley*, 770 F.3d at 274; *see Williams*, 602 F.3d at 317 ("The recent change in the

statutory language … also supports the conclusion that § 111(a)(1) prohibits more than assault, simple or otherwise.").

Thus, for almost a century, Congress has protected federal officials in the performance of their duties by criminalizing six categories of forcibly obstructive conduct. Although over time it has altered the punishment according to the severity of the defendant's behavior—eventually settling on the current three-tier punishment structure—at no point has Congress altered the six basic categories of forcible conduct covered by the statute. Section 111(a) therefore continues to apply to any defendant who forcibly "resists, opposes, impedes, intimidates, or interferes with" a federal officer, whether or not his conduct also constitutes assault. 18 U.S.C. § 111(a); *see Ladner*, 358 U.S. at 176 n.4.

Defendant's argument about vagueness (ECF No. 59 at 9-10) is also incorrect. It draws a clear line between a misdemeanor and a felony: a felony also requires either physical contact or the intent to commit another felony. There is no vagueness, let alone constitutional vagueness. It puts whoever "assaults, resists, opposes, impedes, intimidates, or interferes" on notice. 18 U.S.C. § 111(a)(1). Applying the standard as described by the Court in <u>Bingert</u>, 605 F. Supp. 3d at 120, it does not tie culpability to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S. 285, 306 (2008). Nor does it authorize "arbitrary and discriminatory enforcement," lacking any standards to govern the discretion it grants. *Agnew v. Gov't of D.C.*, 920 F.3d 49, 55 (D.C. Cir. 2019).

All of that said, "[w]hatever daylight lies between the [different] approaches, . . . the practical distinction is not a large one." *Briley*, 770 F.3d at 275. Consistent with its common-law meaning, an "assault" requires "'only' an 'intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so, that places another in

15

reasonable apprehension of immediate bodily harm[.]'" *Cua*, 2023 WL 2162719, a *5; *see, e.g.*, *United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012) ("Because Section 111 does not define assault, we have adopted the common law definition of assault as either (1) a willful attempt to inflict injury upon the person of another, or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.") (quotation marks omitted). And the "injury" that need be attempted or threatened need be nothing more than an offensive touch. *See United States v. Watts*, 798 F.3d 650, 654 (7th Cir. 2015) ("an assault may also be committed by a person who intends to threaten or attempt to make offensive rather than injurious physical contact with the victim"); *Comber v. United States*, 584 A.2d 26, 50 (D.C. 1990) (en banc) (explaining that the common-law crime of simple assault "is designed to protect not only against physical injury, but against all forms of offensive touching, . . . and even the mere threat of such touching"); Criminal Jury Instructions for the District of Columbia, No. 4.100 (2022 ed.) ("Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility"). Thus, even if the government were required to prove an assault as an element of every Section 111(a) offense, that burden is a minimal one.

  Finally, the Court should not apply the rule of lenity. The statutory language unambiguously applies to someone who, for example, "forcibly . . . interferes with any . . . [designated person] . . . while engaged in or on account of the performance of official duties . . . [and] where the acts . . . involve . . . the intent to commit another felony." 18 U.S.C. § 111(a); *Cua,* 2023 WL 2162719, at *11 (rejecting lenity challenge to Section 111(a) for this reason). Lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what

Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotations omitted). Some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016). This is not such a case.

In summary, the Court need not rule on the elements of Section 111(a) at the motion to dismiss stage because the Indictment is sufficient. If and when the issue is ripe, it should reject Christensen's argument.

## CONCLUSION

For the foregoing reasons, the Court should deny Christensen's Motions to Dismiss the Superseding Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Tighe Beach*
TIGHE BEACH
CO Bar No. 55328
BRITTANY L. REED
LA Bar No. 31299
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(240) 278-4348 (Beach)
tighe.beach@usdoj.gov